IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| RYAN NYE, | ) |
| | ) |
| Plaintiff | ) CASE NO. 1:23-CV-00008-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) Chief United States Magistrate Judge |
| REV. ULLI KLEMM, REVEREND DR. | ) |
| TAMI HOOKER, ANNE BROWN, | ) MEMORANDUM OPINION ON |
| IMAM FATIH AKDEMIR, LT. | ) MOTION TO DISMISS SECOND |
| CHARLES BUTTS, | ) AMENDED COMPLAINT |
| | ) |
| Defendants | ) IN RE: ECF NO. 102 |
| | ) |

I.    Relevant Background and Procedural History

Plaintiff Ryan Nye ("Nye") is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") and practitioner of the Salafi (or "Salafee") tradition of Sunni Islam.   Asserting violations of his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), he seeks injunctive relief and compensatory damages against DOC officials who he alleges participated in the denial of his requests for a religious accommodation diet offered by the DOC.  This Court previously granted Nye's motion for preliminary injunctive relief based on its preliminary finding that the denial of Nye's request for the Nation of Islam/Mohammad's Temple of Islam ("NOI/MTI") diet substantially burdened the exercise of his Muslim faith because it is the only diet option offered by the DOC that comported with his religious beliefs. See ECF Nos. 33, 34.  In compliance with the

Court's Order, the DOC provided Nye with the NOI/MTI diet, and he continues to receive that diet.

Nye's Second Amended Complaint ("SAC") is his operative pleading. *See* ECF No. 101. As Defendants, the SAC names Rev. Ulli Klemm, who serves as the DOC's Religious Services Administrator, as well as the following former members of the Central Office Religious Accommodation Review Committee ("RARC"): Rev. Dr. Tami Hooker, Anne Brown, Imam Fatih Akdemir, and Lt. Charles Butts. *Id.* ¶¶ 1-5. The SAC includes two counts. At Count I (*Id.* ¶¶ 46–61), Nye asserts both a claim under the RLUIPA, 42 U.S.C. § 2000cc, and a First Amendment Free Exercise claim against all five Defendants. Count I seeks injunctive relief ordering the Defendants to approve him for the NOI/MTI diet.[1] *Id.* ¶ 61. Count II asserts three constitutional theories under 42 U.S.C. § 1983: an Eighth Amendment "cruel and unusual punishment" claim based on denial of Nye's nutritional needs *(Id.* ¶ 70); a Fourteenth Amendment claim based on the same denial of nutritional needs *(Id.* ¶ 65); and a Fourteenth Amendment due process and equal protection claim (*Id.* ¶¶ 65–66, 72(xii)). Defendants have moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 102. They raise the following arguments for dismissal:

1. Nye's constitutional claims against the Defendants in their official capacities should be dismissed because they are barred by the Eleventh Amendment;

2. Nye's claim for injunctive relief should be dismissed as moot because he has been provided with his requested religious diet;

---

[1] Count I does not request that the Court order the DOC to modify the DOC's existing religious accommodation policy or add to or otherwise change the foods it offers on the NOI/MTI diet. *Id.* ¶ 61.

3. Count I of the SAC fails to state a First Amendment "free exercise" of religion claim;

4. Count II of the SAC fails to state a Fourteenth Amendment equal protection or substantive due process claim;

5. Count II of the SAC fails to state an Eighth Amendment cruel-and-unusual-punishment claim; and

6. The SAC fails to state a supervisory liability or conspiracy claim.

For the reasons explained herein, the Defendants' motion will be granted in part and denied in part.[2]

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion, the court accepts as true the factual allegations of the complaint and the inferences reasonably drawn from those allegations. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, the complaint should only be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint,

---

[2] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28 U.S.C. § 636(c).

3

however, must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Furthermore, the court need not accept inferences drawn by a plaintiff if they are unsupported by its factual allegations. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

III.    Factual Allegations

For purposes of the pending motion to dismiss, the Court accepts the following factual allegations of the SAC as true.

A.    Nye's Religious Beliefs and Practice

At all times relevant to this action, Nye has been incarcerated at the DOC's State Correctional Institution at Albion, Pennsylvania ("SCI-Albion). In 2019, while at SCI-Albion, Nye converted to Islam. ECF No. 101, ¶ 8. He is a practitioner of the Salafi (or "Salafee") tradition, a branch of Sunni Islam, which is characterized by a literalist reading of the Qur'an and the Sunna and a commitment to living in accordance with the practices of the Prophet's companions during the seventh century. *Id.* ¶¶ 9, 13. During pandemic-related lockdowns, Nye devoted himself to religious study, including the Qur'an and the Hadith. *Id.* ¶ 10. Since his conversion,

he has participated in Friday congregational prayers, the Tawhid, and the class of 40 Hadith, and has observed Ramadan for three consecutive years. *Id.* ¶¶ 10, 27, 30. Central to Nye's religious practice is adherence to Islamic dietary law, which he understands to require the consumption of halal meat, that is, meat slaughtered in strict accordance with Islamic guidelines. *Id.* ¶¶ 34–35, 38. He claims that vegetarianism is affirmatively discouraged, if not forbidden, under the tenets of his faith. *Id.* ¶¶ 39–41. In his view, the only diet option available at SCI-Albion that is consistent with his religious obligations is the NOI/MTI diet, a DOC-authorized religious accommodation diet consisting of fish, beans, rice, cottage cheese, vegetables, and milk. *Id.* ¶¶ 34, 39. Nye does not request that Defendants provide him halal meat or otherwise modify the NOI/MTI diet as currently offered; he requests only that Defendants approve him for an accommodation that already exists within DOC policy. *Id.* ¶¶ 36, 42.

B.    The DOC's Religious Diet Accommodation Process

According to the SAC, the DOC maintains a policy (DC-ADM 819) under which it "seeks to accommodate the sincerely held religious beliefs of inmates as it relates to their dietary requirements." *Id.* ¶ 14. The NOI/MTI diet is one of the religious accommodation diets expressly authorized under that policy. *Id.* ¶ 15. An inmate seeking approval for such an accommodation must submit a Non-Grooming Religious Accommodation Request Form to his Facility Chaplaincy Program Director (FCPD), providing, among other things, the name of his religion, the nature of the accommodation sought, the key tenets and practices of his faith, and citations to

5

sacred texts supporting the request. *Id.* Within twenty days of receipt, the FCPD is required to interview the inmate, complete the relevant portions of the form, and circulate all documentation to designated prison personnel for review; the full package is then forwarded to the Religious Accommodation Review Committee (RARC) for a final determination. *Id.* ¶¶ 16–17. Nye alleges that proper procedures were not followed at one or more stages of this process with respect to each of his requests. *Id.* ¶¶ 16–17.

C.    The First Request (September 10, 2020)

On September 10, 2020, Nye submitted his first Religious Diet Request Form, seeking approval for the NOI/MTI diet. *Id.* ¶ 18. On the form, he explained that his dietary needs could not be met through the standard Mainline or Alternative Protein Source (AP) menus because "[n]o halal meats are offered which are Muharram." *Id.* ¶ 20.

On September 23, 2020, FCPD Hafel conducted the required inmate interview and completed a Religious Diet Evaluation Form, in which he documented Nye's conversion to Islam, his commitment to religious study, and his efforts to conform his conduct to his faith's dictates, including that Nye had been "buying mackerel and fish from the commissary or just not eating" to comply with his dietary obligations. *Id.* ¶ 21. Hafel recommended approval of the accommodation request. *Id.* ¶ 21. On September 29, 2020, the DOC's Deputy Superintendent of Centralized Services (DSCS) likewise recommended approval. *Id.* ¶ 22.

6

Notwithstanding both recommendations, prison officials reviewed Nye's commissary purchase records and identified items they deemed inconsistent with the NOI/MTI diet. *Id.* ¶ 23. On October 30, 2020, Religious Services Administrator Rev. Ulli Klemm denied the request. Rev. Klemm's denial memorandum stated that the request was "not of a religious nature but rather a personal preference," that Nye's "only knowledge of his relatively new faith seem[ed] to be with dietary requirements," and that his commissary purchases "within three months of the CEN review process" were inconsistent with the foods he claimed his religion prohibited him from consuming. *Id.* ¶ 24. Nye alleges this determination was a contrivance, coordinated among and approved by all Defendants, to deny him religious dietary accommodation. *Id.* ¶¶ 24–25.

D.    The Second Request (May 28, 2021)

On May 28, 2021, Nye submitted a second Religious Diet Request Form again seeking the NOI/MTI diet. *Id.* ¶ 26. FCPD Hafel once more interviewed Nye and, on June 10, 2021, again recommended approval, noting that Nye had meaningfully deepened his engagement with his faith in the intervening months. He had completed a second Ramadan, focused on the spiritual dimensions of his religion, and demonstrated a sustained commitment to Islamic practice. Hafel concluded that Nye "seem[ed] serious with his faith." *Id.* ¶ 27. The DSCS again recommended approval on June 11, 2021. *Id.* ¶ 28.

Prison officials again reviewed Nye's commissary records, and again identified certain purchases they viewed as incompatible with the NOI/MTI diet. *Id.* On July

7

26, 2021, Rev. Klemm issued a second denial, this time resting exclusively on the commissary-purchase rationale: the request was "DENIED as the inmate's commissary purchases within three months of the CEN review process of his request show inconsistency with the foods he claims his religion prohibits him from consuming." *Id.* Nye avers that, to the extent any items were inconsistent with the NOI/MTI diet, his contrary understanding of their permissibility was sincerely held, and in any event the number of items at issue was relatively few. *Id.* He further alleges that this second denial, like the first, reflected a coordinated determination among all Defendants to frustrate his accommodation requests. *Id.*

E.      The Third Request (January 1, 2022)

On January 1, 2022, Nye submitted a third Religious Diet Request Form, again seeking the NOI/MTI diet. *Id.* ¶ 29. FCPD Hafel conducted a third interview and, on February 14, 2022, submitted a third recommendation of approval. Hafel's evaluation form described Nye's sustained religious development over three years of Islamic study, his observance of the five daily prayers, his participation in Jumu'ah via the prison's religious services channel, and his fasting during Ramadan. *Id.* ¶ 30. Hafel noted that Nye grounded his dietary convictions in specific Qur'anic sources and found his belief to be sincere: "This seems like a sincere religious belief and I recommend approval." *Id.* The DSCS again recommended approval on February 16, 2022. *Id.* ¶ 31.

On April 8, 2022, Rev. Klemm denied the request for a third time. *Id.* ¶ 32. On this occasion, Rev. Klemm shifted his rationale, stating that "his request for a diet

free from pork and non-halal meat does not require a religious accommodation" because the DOC's Alternative Protein Menu Option was available to Nye. *Id.* At a subsequent hearing, Rev. Klemm elaborated that the Department's position was that the Alternative Protein Menu put it "in compliance with [Nye's] religious requests." *Id.* ¶ 33. Nye contests this characterization, stating that the Alternative Protein Source diet is a wholly vegetarian diet that would require him to forgo meat, a course of conduct that is, in his view, contrary to the requirements of his faith. *Id.* ¶¶ 39–41. Because the Alternative Protein Source diet excludes all meat, Nye alleges that mandating it as the only available accommodation compels him to choose between adequate nutrition and compliance with his religious obligations. *Id.* ¶ 41.

 F. Rev. Klemm's Acknowledgment of Sincerity

Although Rev. Klemm's first two denials rested, in part, on a finding that Nye's requests were not grounded in sincere religious belief, he acknowledged at the hearing and after reviewing the record of Nye's three years of religious study, Ramadan observance, and devotional practice, that he believed Nye's most recent request was "faith based and sincere." *Id.* ¶ 37.

IV. Discussion and Analysis

 A. Nye's official-capacity claims for monetary damages are barred by the Eleventh Amendment.

The Eleventh Amendment bars suits for monetary damages in federal court against states, state agencies, and state officials acting in their official capacities, absent consent by the state. *Idaho v. Coeur d'Alene Tribe of Idaho*, <u>521 U.S. 261</u> (1997); *Seminole Tribe of Florida v. Florida*, <u>517 U.S. 44, 54</u> (1996); *Kentucky v.*

*Graham*, 473 U.S. 159, 169 (1985).  This bar extends to suits against state officials in their official capacities because such suits are, in effect, suits against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69-71 (1989).  Pennsylvania has expressly withheld consent to suit in federal court.  *See* 42 Pa. C.S. § 8521(b); 1 Pa. C.S. § 2310;*see also, Lavia v. Pennsylvania DOC*, 224 F.3d 190, 195 (3d Cir. 2000).  Here, each Defendant is a state official, and all are sued in both their official and individual capacities.  *See* ECF No. 101, *generally.*  To the extent Nye seeks monetary damages from the Defendants in their official capacities, those claims are barred by the Eleventh Amendment and must be dismissed.

The Eleventh Amendment does not, however, preclude prospective injunctive relief against state officials in their official capacities.  *See MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 506 (3d Cir. 2001).  As discussed below, however, Nye's claims for injunctive relief have been rendered moot by events during this litigation.

      B.     Nye's claims for injunctive relief are moot.

Defendants argue that Nye's claims for injunctive relief are moot because he is currently receiving the NOI/MTI diet following this Court's granting of his request for a preliminary injunction (*see* ECF No. 34), and per DOC Policy DC-ADM 819, the diet can be withdrawn only if Nye voluntarily surrenders it or he fails to comply with its rules.  *See* ECF No. 103 at pp. 5-6.  Given this, Defendants maintain that Nye has already received all equitable relief potentially available to him under RLUIPA or § 1983.  *Id.*  The Court agrees.

A case is moot when the issues presented are no longer live or the parties lack a cognizable interest in the outcome. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013). A court may adjudicate only actual, ongoing cases, or controversies, and a justiciable case or controversy must exist at all stages of review. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). But the Supreme Court has recognized a "voluntary cessation" exception to the mootness doctrine under which a "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Under this exception, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Employees Int'l Union*, 567 U.S. 298, 307 (2012). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). *See also Reading v. N. Hanover Twp., New Jersey*, 124 F.4th 189, 198 (3d Cir. 2024) (holding that a defendant's voluntary cessation of challenged conduct moots a case only if the defendant can show that "the [practice] cannot reasonably be expected to recur"). Defendants have met this burden in this case. Nye has been receiving the NOI/MTI diet since the Court granted his request for a preliminary injunction, and DOC Policy DC-ADM 819 permits its withdrawal only if Nye voluntarily surrenders the diet or he violates its rules. This means that Nye, not Defendants, controls whether he will

11

continue to receive the NOI/MTI diet.  Courts have consistently found RLUIPA injunctive relief claims based on religious diet accommodations to be moot where a policy or other restriction prohibited the involuntary or arbitrary withdrawal of the diet.[3]  Where such a policy or other safeguard exists, speculation or conjecture that a defendant might defy the policy or restriction and terminate the diet is not enough to overcome mootness.  *See e.g.*, *Townsend*, 2025 WL 1529330, at *5 (holding that RLUIPA claim for injunctive relief was moot where although it was "theoretically

---

[3] *See Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (holding that claim for injunctive relief was moot where the plaintiff "currently receives a non-meat diet and there is no evidence that [the defendant] intends to revoke Nelson's religious diet"); *Monson v. Steward*, No. 2:15-CV-00513-PK, 2017 WL 2882709, at *6 (D. Or. July 6, 2017) (holding that claims for injunctive and declaratory relief under RLUIPA were moot where Oregon Department of Corrections had "provided Monson with the requested kosher diet and will continue to do so until Monson is either released from ODOC custody, requests to be removed from the diet, or violates the rules for inmates receiving kosher diets"); *El v. Evans*, 694 F. Supp. 2d 1009, 1012 (S.D. Ill. 2010) (holding that inmate's RLUIPA claim for injunctive relief was moot where "[h]e is receiving a vegan diet [as demanded] and offers nothing more than speculation that it may be revoked in the future), *rev'd in part on other grounds, vacated in part sub nom. Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011); *Townsend v. Liebel*, No. 2:23-CV-00429-JMS-MKK, 2025 WL 1529330, at *5 (S.D. Ind. May 29, 2025) (holding that RLUIPA claim for injunctive relief was moot where although "theoretically possible that the [prison] will reverse [its] decision and [a prison official] will revoke [Mr. Townsend's] [Kosher] diet on some other basis, that possibility is supported only by speculation and not evidence"); *Boyd v. Liebel*, No. 122CV00673TWPMPB, 2022 WL 2079072, at *4 (S.D. Ind. June 9, 2022) (holding that claim for injunctive relief was moot where plaintiff "has been approved for and is receiving a kosher diet" he requested as a religious accommodation); *Carmichael v. M. Aguilar*, No. 1:12CV01913 LJO DLB, 2015 WL 1849868, at *1 (E.D. Cal. Apr. 22, 2015) (sustaining magistrate judge's finding of mootness of injunctive relief claim under RLUIPA where "Plaintiff began receiving a Halal diet in September 2013"); *Porter v. Wegman*, No. 1:10-CV-01500 LJO, 2015 WL 2345630, at *10 (E.D. Cal. May 14, 2015) (holding that "[b]ecause injunctive relief is the sole form of relief available under RLUIPA, Plaintiff's subsequent receipt of the Kosher diet in October of 2014 moots his request for injunctive relief), *subsequently aff'd in part, rev'd in part on other grounds*, 671 Fed. Appx. 442 (9th Cir. 2016); *AlAmiin v. Morton*, 528 Fed. Appx. 838 (10th Cir. 2013) (holding that injunctive relief claim was moot where "the policy underlying the denial of [the plaintiff's] halal-meal requests has been amended, and thanks to the injunction entered in his favor against other defendants in this litigation, Mr. AlAmiin now has what he originally sought— [Correctional Facility] will provide him with halal meals that are prepared and served according to kosher standards"). *Compare Wiggins v. Hoisington*, No. CV 11-967 KG/KK, 2015 WL 13665442, at *11 (D.N.M. Feb. 27, 2015), *report and recommendation adopted*, No. CV 11-967 KG/KK, 2015 WL 13665424 (D.N.M. May 1, 2015) (holding that injunctive relief claim was not moot where conformity of diet to religious requirements remained at issue and, in any event, "Defendant Roark could take it away again tomorrow, because unlike the defendant in *AlAmiin*, he is not bound by an 'injunction entered in [Plaintiff's] favor against other defendants'").

possible that the [prison] will reverse [its] decision and [a prison official] will revoke [Mr. Townsend's] [Kosher] diet on some other basis, that possibility is supported only by speculation and not evidence"). In this case, the Court's prior order granting a preliminary injunction and DOC Policy DC-ADM 819 demonstrate that denial of Nye's NOI/MTI diet is not reasonably expected to reoccur. Accordingly, Nye's claims for injunctive relief under RLUIPA and §1983 will be dismissed as moot.

Furthermore, the unavailability of injunctive relief in this case, in turn, requires the dismissal of Nye's RLUIPA claim because only injunctive and declaratory relief are permitted under the statute.[4] *See Landor v. La. Dep't of Corr. & Pub. Safety*, 609 U.S. —, 2026 WL 1791277, at *6 (U.S. June 23, 2026) (holding that the Spending Clause of the Constitution does not allow RLUIPA to impose damages liability on state actors in their individual capacities); *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012) (same). The Court will therefore dismiss Count I of the SAC to the extent it asserts a claim under RLUIPA.

C.    Count I of the SAC states a First Amendment "free exercise" claim.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. In determining whether prison officials have violated an inmate's right to free exercise of religion by denying religious accommodation, a court considers:

---

[4] Like Nye's request for injunctive relief, any request for declaratory relief is also moot. *See Monson*, 2017 WL 2882709, at *6 (holding that claims for injunctive and declaratory relief under RLUIPA were moot where Oregon Department of Corrections had "provided Monson with the requested kosher diet and will continue to do so until Monson is either released from ODOC custody, requests to be removed from the diet, or violates the rules for inmates receiving kosher diets").

(1) whether the inmate's belief is sincere and truly religious in nature; (2) whether there is a rational connection between the institution's refusal to provide the accommodation sought and a legitimate penological interest; and (3) whether the refusal is reasonable in light of the penological interest, the inmate's interest, and the overall effect on the prison community. *DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000). It is the inmate's burden to demonstrate the invalidity of a prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Defendants argue that their initial denials of Nye's religious accommodation requests rested on information that undermined the sincerity of his religious belief. *See* ECF No. 103 at 8. They state that Nye's "commissary purchases within three months of the review process of his request showed inconsistency with the foods he claimed his religion prohibits him from consuming." *Id.* (citing ECF No. 101. ¶¶ 24, 28). They also cite possible inconsistencies in the dietary specifications he included in his requests. *Id.* A developed record concerning such inconsistencies may ultimately establish the reasonableness of Defendants' denials, but the Court's review is presently limited to the allegations of the SAC, which amply support the sincerity of Nye's religious beliefs. Similarly, based on the SAC, the Court cannot make any finding regarding the penological reason for Defendants' denials of Nye's requests for accommodation let alone assess whether any such penological reason was rationally connected to the denials. Although Defendants cite "budgetary constraints" as a legitimate penological interest underlying their denials (*Id.* at 9), the Court cannot accept this invocation without a record to support it.

14

Application of the *Turner* factors is inherently fact-intensive and typically requires a developed record. *See Enoch v. Perry*, 2020 WL 4057643, at *10 (W.D. Pa. July 20, 2020) ("The *Turner* analysis is exceedingly fact-intensive and does not lend itself to resolution on a motion to dismiss."); *see also Morris v. Scheuer*, 2023 WL 2088169, at *7 n.5 (W.D. Pa. Feb. 17, 2023) (citing *Enoch*). The SAC's factual allegations support plausible inferences that the denials of Nye's religious diet accommodation requests were not rationally connected to any legitimate penological interest. At this stage of the case, this is sufficient to defeat a motion to dismiss under Rule 12(b)(6). The Court will therefore deny Defendants' motion to the extent it seeks dismissal of Nye's § 1983 claim for violation of his First Amendment right to free exercise of his religion.

D. Count II of the SAC fails to state an Eighth Amendment "cruel-and-unusual-punishment" claim.

Nye claims that Defendants' denial of his religious accommodation diet not only violated his First Amendment rights but also deprived him of reasonable nutrition in violation of the Eighth Amendment. *See e.g.*, ECF No. 101, at ¶ 70 ("These Defendants, individually, and in a conspiracy with each other, violated Nye's rights under the Eighth Amendment to the United States Constitution, depriving Nye of his right to be free from cruel and unusual punishment by denying vital nutritional needs that these Defendants knew or should have known that he required."). While the Eighth Amendment's prohibition of cruel and unusual punishment requires that inmates be provided a diet that meets their essential nutritional needs, the facts

alleged in the SAC are insufficient to support that any Defendant violated that right in this case.

The Eighth Amendment prohibits the "wanton and unnecessary infliction of pain" and conditions of confinement that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Union Cnty. Jail Inmates v. Di Buono,* 713 F.2d 984, 997 (3d Cir. 1983) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Although this prohibition "does not mandate comfortable prisons," it does forbid "inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Accordingly, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

To state an Eighth Amendment claim based on prison conditions, a plaintiff must allege facts to support that: (1) prison conditions deprived him of "life's minimum necessities"; (2) the deprivation was sufficiently serious; and (3) "a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d Cir. 1997). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (citation omitted). A prison official is liable only if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. Thus, the facts alleged must support both an objective element—an

16

serious deprivation—and a subjective element—the defendant's deliberate indifference.  *See Id.* at 834.

"Only a 'substantial deprivation' of food is recognized as being of constitutional dimension." *Ruiz v. United States*, 664 Fed. Appx. 130, 134 (3d Cir. 2016) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).  Deprivation of food or nutrition is substantial only if it results in serious harm or poses an immediate danger to the inmate's health.  *See Rieco v. Moran*, 633 Fed. Appx. 76 (3d Cir. 2015) (serving unsanitary or inadequate food may violate the Eighth Amendment only if the inmate alleges and proves a distinct and palpable injury resulting from the food); *Brown v. Martinez*, 2007 WL 2225842 (M.D. Pa. 2007) (inmate's claim Eighth Amendment claim dismissed where record did not support inmate's weight loss, unhealthy body weight, or medical complications attributable to malnutrition); *Gerber v. Sweeney*, 292 F.Supp.2d 700 (E.D. Pa. 2003) (unsupported assertions about dietary inadequacies, such as the substitution of cheese and fruit for milk and juice, were insufficient to establish a serious deprivation, particularly when evidence showed the inmate's health improved during the relevant period).  *Compare Jackson v. Gordon*, 145 Fed. Appx. 774 (3d Cir. 2005) (allegations of constant hunger, lack of proper nutrition, and denial of a therapeutic diet were sufficient to state an Eighth Amendment claim when the inmate alleged that prison officials knowingly failed to address his severe lactose intolerance and egg allergy, which caused serious health issues).

17

Nye alleges that the Defendants' denials of his requests for a religious accommodation diet forced him to choose between abiding by his religious beliefs and meeting his nutritional needs. While this allegation supports a First Amendment claim, standing alone it falls short of supporting a claim of cruel and unusual punishment under the Eighth Amendment. *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir.1991) (affirming dismissal of Eighth Amendment claim brought by Seventh Day Adventist based on deprivation of requested vegetarian meals, holding that "the mere denial of a requested [religious] diet is insufficient to establish a cognizable Eighth Amendment claim."). Nye acknowledges that he continued to receive the DOC's standard mainline diet and had access to the commissary throughout the time Defendants declined to grant his request for the NOI/MTI diet. Nye does not allege facts to support that the foods on the DOC's mainline diet or through the commissary that he could permissibly eat were inadequate to meet his basic nutritional requirements. He does not allege facts to support that he experienced a significant weight loss or other materially adverse health effect due to the denial of the NOI/MTI diet. The conclusory allegations of the SAC regarding inadequate nutrition are insufficient to support a significant deprivation.

The SAC also fails to allege facts to support that any Defendant acted with deliberate indifference to Nye's basic nutritional requirements. To act with deliberate indifference, "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). Nye's bald assertion that

Defendants knew or should have known that their denial of the NOI/MTI diet would subject him to inadequate nutrition (*see* Doc. 101, ¶ 72) is not supported by the facts alleged in the SAC and therefore insufficient to support an inference of deliberate indifference. *See Twombly*, 550 U.S. at 555; *California Pub. Emp. Ret. Sys.*, 394 F.3d at 143.

Because the factual allegations of the SAC support neither the objective nor subjective elements of an Eighth Amendment claim, the Court will grant Defendants' motion to dismiss this claim.

E.    The SAC states a Fourteenth Amendment equal protection claim.

Count II of the SAC also includes a Fourteenth Amendment equal protection claim. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.   To state a Fourteenth Amendment equal protection claim, a plaintiff must allege facts to support findings that: (1) he was treated differently from others similarly situated, and (2) this different treatment was the result of intentional or purposeful discrimination. *See Brown v. Beard*, 445 Fed. Appx. 453, 456 (3d Cir. 2011) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)).   Classifications based on religion are inherently suspect and subject to strict scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Fullman v. City of Philadelphia*, 2026 WL 736307, at *10 (E.D. Pa. Mar. 16, 2026) (citing *Cleburne*).   But an equal protection claim survives a motion to dismiss only if the facts alleged support a plausible inference of discriminatory intent.

19

Nye alleges that the DOC "routinely ... provides accommodation in the form of dietary provisions to inmates of Nye's religious beliefs, including food and sustenance consistent with Nye's faith ... but denied them to Nye without rational cause–or even a heightened level of scrutiny–in violation of Nye's rights to Equal Protection under the United States Constitution." ECF No. 101, ¶ 65. As this allegation acknowledges, Nye is not claiming that the Defendants discriminated against him based on his religion. Indeed, he affirmatively alleges that Muslim inmates are "routinely" approved for the NOI//MTI diet. Instead, he claims that Defendants denied his request based on his unspecified "ethnic origin." *Id.* ¶ 66. The facts alleged in the SAC do not clearly disclose Nye's ethnic origin or how it allegedly influenced Defendants' denials of his religious accommodation diet. But construed with extreme liberality, Nye's allegations suggest that Defendants subjected his religious diet accommodation request to greater scrutiny because he was not of an ethnic origin they associated with Islam. Given the standard of review that applies to Defendants' motion to dismiss, the Court will accept this plausible inference and deny the motion as to Nye's equal protection claim.[5]

---

[5] It is also possible that Nye is asserting a "class-of-one" equal protection claim. Under a "class-of-one" theory of liability, a plaintiff asserts that he "has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim based on this theory, a plaintiff must allege facts to support that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Nye alleges that Defendants denied his requests for a religious accommodation diet despite their having routinely granted the requests of other similarly situated inmates of his faith. These allegations are sufficient to support the first two elements of a "class-of-one" claim. The third element, however, is a closer call. DOC policy requires prison officials such as Defendants to consider several factors in evaluating whether to grant a request for a religious diet accommodation. *See* DC-ADM 809. Because the approval process involves considerations beyond the inmate's self-identification of his faith and understanding of that faith's dietary restrictions, the fact that many NOI/MTI diets were approved does not alone support

F.    Count II of the SAC fails to state a Fourteenth Amendment substantive due process claim.

Count II of the SAC also includes a substantive due process claim based on the same facts on which it bases Nye's First Amendment claim. The due process claim is barred by the "more-specific-provision rule." Under this rule, if "a specific constitutional provision" applies to a constitutional claim, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See also, DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020). In this case, the First Amendment's Free Exercise Clause directly applies to Nye's claim, and he may not bring a substantive due process claim based on the same alleged constitutional deprivation. Accordingly, the Court will grant Defendants' motion to dismiss Nye's substantive due process claim.

G.    The SAC states a conspiracy claim.

The SAC also asserts a civil conspiracy claim under § 1983 against all Defendants. *See* ECF No. 101, ¶¶ 24-25, 28, 32, 70-71. Defendants also read certain allegations of the SAC (*Id.* ¶¶ 75-77) as asserting supervisory liability against them. Defendants argue in footnotes that Nye's supervisory liability allegations and conspiracy claim are insufficiently pled. *See* ECF No. 103 at 11 n.5, 14 n.6.

---

an inference that the denial of Nye's request was without a rational basis. As DC-ADM 809 reflects, consideration of a request for a religious accommodation diet is an individualized and often nuanced process. As such, even an erroneous denial of such a request will rarely be without some rational basis. But because the record before the Court is the SAC alone, the Court must accept Nye's allegation regarding the absence of a rational basis for the denial as true and accept the "class-of-one" theory as an alternative basis requiring denial of Defendants' motion.

21

With respect to supervisory liability, the Third Circuit has recognized two theories under which a supervisor may be liable: (1) where the supervisor established or maintained a policy, practice, or custom that directly caused the constitutional harm; or (2) where the supervisor participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in a subordinate's violation. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010). In this case, however, each Defendant is alleged to have personally participated in the RARC review and denial of Nye's religious accommodation requests. *See* ECF No. 101, ¶¶ 1-5. Nye does not appear to base his claims against any Defendant on the existence of a policy custom or practice or any alleged knowledge and acquiescence in the misconduct of subordinates. Because Nye's allegations of personal participation in the violation of his rights are the exclusive ground upon which his claims are based, the Court need not address any other theory of supervisory liability.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018). Conclusory allegations of conspiracy are insufficient to state a claim. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010); *Tindell v. Beard*, 351 Fed. Appx. 591, 594 (3d Cir. 2009). Nye bases his conspiracy claim primarily on his allegations that Defendant RARC members voted in concert to deny Nye's three requests despite having received repeated

22

recommendations for approval from the FCPD and DOC Religious Services. *See* ECF No. 101, ¶¶ 20-32, 65-66, 70-71. At the pleading stage, these allegations support a plausible inference that Defendants agreed and acted in concert to deprive Nye of his First Amendment rights. The Court will therefore deny Defendants' motion as to Nye's conspiracy claim.

V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. The Court will grant the motion as to all claims for monetary damages against the Defendants in their official capacities, Nye's RLUIPA claim, including his request for injunctive relief, Nye's Eighth Amendment cruel-and-unusual-punishment claim, and Nye's Fourteenth Amendment substantive due process claim. In all other respects, the motion will be denied. A separate order will follow.

Dated: July 29, 2026

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE